601 A.2d 860

**HULDAH A., a student by Drew ANDERSON, parent, pro se, Petitioner,**

v.

**EASTON AREA SCHOOL DISTRICT, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 13, 1991.

Decided Jan. 3, 1992.

Drew  Anderson,  pro  se.

Elwood M. Malos, for respondent.

Before PALLADINO and BYER, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Drew Anderson (Anderson) petitions on behalf of his daughter Huldah for review of the order of the Special Education Appeals Panel, dated April 4, 1991.

Huldah is a gifted student [1] in the Easton Area School District (School District). For the primary school (kindergarten through fifth) and middle school (sixth and seventh) grades, the School District uses a "pull-out" gifted program, one in which gifted students are removed from the regular classroom and provided certain identified programming in addition to the regular curricula. For the intermediate school (eighth and ninth) and high school (tenth through twelfth) grades, the School District uses an "enrichment" program, whereby all qualified students, whether or not gifted, are placed in separate enriched (or advanced) classes for given subjects.

Huldah completed the seventh grade in June 1990. Her promotion to the eighth grade resulted in her being placed in the "enrichment" program. Anderson objected to Huldah's being placed in the "enrichment" program, and he requested a due process hearing by letter to the School District.[2] The thrust of Anderson's objection, as divined

1. The definition of "gifted" is set forth in 22 Pa.Code § 342.1 as follows:

   *Mentally gifted*–Outstanding intellectual and creative ability the development of which requires special services and programs not ordinarily provided in the regular education program. This term includes a person who has an IQ of 130 or higher and when multiple criteria as set forth in Department Guidelines indicate gifted ability. Determination of gifted ability will not be based on IQ score alone. A person with an IQ score lower than 130 may be admitted to gifted programs when other educational criteria in the profile of the person strongly indicate gifted ability. Determination of mentally gifted shall include a full assessment and comprehensive report by a public school psychologist specifying the nature and degree of the ability.

2. 22 Pa.Code § 14.64(a) provides:

from the hearing record, was that he wanted the School District to perform an evaluation of Huldah and that if it did not then he (Anderson) would have one performed at the School District's expense. Anderson also wanted Huldah to continue in the "pull-out" program pending the outcome of the evaluation and hearing, and Anderson wanted an award of attorney's fees for having to bring the matter to hearing.

Pursuant to the regulations, Anderson was given a hearing. The hearing officer issued an order on February 5, 1991. There being an evaluation extant for Huldah, the hearing officer directed that the Multidisciplinary Team (MDT) of the School District use that evaluation and any additional data, if needed, to write a comprehensive report to be given to the Individual Education Program (IEP) team which then would determine the level of intervention required to meet Huldah's needs, and would complete a new IEP if the proposed IEP were deemed inappropriate. In addition, the hearing officer directed that the School District was not required to pay the expense of an independent evaluation requested by Anderson.[3]

Anderson appealed to the Special Education Appeals Panel (Panel).[4] The Panel stated in its opinion dated April 4, 1991 that, "it was with great difficulty that this panel was able to ascertain precisely what was at issue before the hearing officer." (Panel opinion, p. 2.) The Panel determined, and we agree, that the issues presented were: (1) whether the parents were entitled to reimbursement for attorney's fees; (2) whether the School District was required to pay for an independent evaluation of Huldah; and

(a) Parents may request an impartial due process hearing concerning the identification, evaluation or educational placement of a student who is exceptional or who is thought to be exceptional or a young child who is eligible or who is thought to be eligible, if the parents disagree with the school district's identification, evaluation or placement of the student or young child.

3. The hearing officer did not address Anderson's request for recovery of attorney's fees.

4. The Special Education Appeals Panel is an appeal board established by the Department of Education pursuant to 22 Pa.Code § 14.64(n).

(3) pendency of Huldah's educational program during the placement process, i.e., maintaining the status quo.

The Panel issued the following order:

## ORDER

1. Within 20 days of the date of this Order, the school district is directed to initiate the MDT and IEP processes as set forth in current regulations [22 Pa.Code §§ 14.1–14.73] and standards of the department with the goal of offering a program and placement for Huldah within the time lines required by those regulations and standards.

2. Unless agreed otherwise by Huldah's parent, Huldah is to be placed in the regular (meaning no enrichment) eighth grade educational program with a "pull out" gifted program with the parameters contained in the middle school gifted program whence she came.

3. The parent is not entitled to an independent evaluation at school district expense.

4. The hearing officer and this panel are without legal authority to award attorney's fees in this matter.

5. All other findings and conclusions of the hearing officer to the extent consistent herewith are hereby adopted.

Anderson raises several issues, set forth in five questions, before us. Issues 1, 2, 3 and 4, although not artistically stated, raise the questions addressed by the Panel. Issue 5 was not raised or addressed below, thus we will not address it.[5] 2 Pa.C.S. § 703.

■ Our scope of review of an administrative board's final adjudication is limited to a determination of whether the adjudication is supported by substantial evidence, is in accordance with law, or whether constitutional rights were

5. Issue 5 contains Anderson's assertion that the school psychologist's testimony and written reports were improperly collected and used, and he requests that they be stricken from this record as well as from Huldah's educational record.

violated. *Clark v. Department of Public Welfare*, 118 Pa.Commonwealth Ct. 587, 546 A.2d 1277 (1988).

█ Anderson contends that he is entitled to recovery of attorney's fees and to obtain an independent evaluation for Huldah at public expense pursuant to the federal Individuals with Disabilities Education Act[6] (IDEA), 20 U.S.C. §§ 1400–1454. While it is true that 20 U.S.C. § 1415 provides for an award of attorney's fees and for the opportunity to obtain an independent evaluation of the child at public expense, we are not bound by IDEA in this case. IDEA was enacted for the benefit of children with disabilities. 20 U.S.C. § 1401(a)(1) provides:

(1) The term "children with disabilities" means children—

(A) with mental retardation, hearing impairments including deafness, speech or language impairments, visual impairments including blindness, serious emotional disturbance, orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and

(B) who, by reason thereof need special education and related services.

Nowhere in IDEA does it provide that gifted children fall within its protections, and Anderson cites no authority in his argument to persuade otherwise. Accordingly, we affirm the Panel's denial of an independent evaluation at the School District's expense and of an award of attorney's fees.

█ Anderson next asserts that he is entitled to reimbursement from the School District for materials and/or services he purchased to replicate Huldah's prior educational program during the pendency of those proceedings, and he again cites IDEA as authority for the allowance of such reimbursement.

As hereinabove set forth, IDEA is not controlling in this matter. The Panel agreed with Anderson that, pending the proceedings before the hearing officer through judicial re-

6. Formerly known as the Education of the Handicapped Act.

view, no change shall be made in Huldah's educational placement (i.e., she shall remain in the "pull-out" program).[7] There is no statute, regulation or case law cited by Anderson, nor did our research uncover any authority for reimbursement to the parent of the cost of materials and/or services purchased for supplementary special education of a gifted student outside of the school district.

Upon review of the record, we determine that the Panel's order is supported by substantial evidence and is in accordance with law, and that no constitutional rights were violated, and we affirm the Panel's decision.

## ORDER

AND NOW, this 3rd day of January, 1992, the order of the Special Education Appeals Panel, dated April 4, 1991, is affirmed.

BYER, Judge, concurring.

I agree that the Special Education Appeals Panel correctly decided the narrow issues before us, and I would affirm based upon the excellent opinion of Appellate Officer Selkowitz.[1]

I believe it warrants emphasis that Anderson, who appears to be seeking what he believes to be the best education for his educationally gifted daughter,[2] does not bear

7. 22 Pa.Code § 14.61 provides procedural safeguards in matters such as the present case. Section 14.61(b) provides:

   (b) No change in the identification, evaluation, educational placement or IEP of an exceptional student or an eligible young child may be made *during the pendency of an administrative or judicial proceeding* unless agreed to by the parties to the proceeding. (Emphasis added.)

1. I disagree with the majority that Anderson has failed to preserve for review his argument that certain psychological information and reports should be stricken from the record. This issue was addressed in the opinion by Appellate Officer Selkowitz and I believe the Special Education Appeals Panel acted within its discretion in rejecting the argument (pp. 7–8).

2. Appellate Officer Selkowitz did observe that Anderson might unwittingly be working at odds with Huldah's best interest by removing her

total responsibility for the problems in this case, although the fact that he is proceeding *pro se* does not help. Instead, I agree completely with the observation of Appellate Officer Selkowitz, who wrote in his opinion for the Special Education Appeals Panel:

> Although there is much in this record that is not clear, there is one conclusion which can be drawn with crystalline purity: the school district failed to follow mandated procedures regarding due process at almost every turn. It is simply not within the discretion of the school district to decide which processes it will and will not follow no matter how well intentioned the motives of the person or persons making those decisions. For example, and without belaboring all of the difficulties displayed by the district's actions in this case, the district was required to have forwarded the request for a hearing to the Right to Education office upon its receipt from the parents. In actuality, the school district never forwarded this request and the hearing only resulted from the parents making the request more than three months later and directly to the Right to Education office. Had those three months not elapsed, it is quite likely that this matter would and could have been resolved prior to the beginning of the school year or certainly near the beginning of the school year, thus limiting any issues regarding pendency. Moreover, it is also clear that the school district has not followed the appropriate procedures regarding the development of an IEP for Huldah. The district's attempt to do so during the hearing process does not replace or excuse its obligations to follow the regulations.

(Opinion, pp. 5–6).

A top priority of our public education system must be the nurturing of educationally gifted students to enable them to

from the enrichment program in favor of her placement in a "pull out" program. Although there is some logic to this observation, and it is possible that Anderson is laboring under a misunderstanding of the relative benefits of the enrichment and "pull out" programs, Anderson does have the right to proceed according to what he considers to be the best interest of his daughter.

reach their full potential. The Department of Education's regulations, in conformity with the mandates of state and federal law, are designed to guard against school districts losing our best and brightest by failing to provide them with the special attention they need to avoid the real threat of educational boredom faced by a gifted child whose special talents are not recognized or nurtured properly.

It truly is unfortunate when the proper education of a gifted child must be determined through an adversarial litigation process. A court is not the best forum for deciding such issues. Instead, for the education system and the administrative review process to function properly, there must be more cooperation by school districts in addressing the legitimate concerns of parents of gifted children than occurred at least initially in this case.

Our affirming the decision of the Special Education Appeals Panel in this case should not be viewed as condoning the conduct of the school district criticized in the opinion by Appellate Officer Selkowitz or as diminishing the rights of gifted children and their parents.